(No. 5761. December 31, 1931.)

ERWIN PAINE, Appellant, v. ALBERT STROM and F. M. GREEN, Respondents.

[6 Pac. (2d) 849.]

Thomas A. Feeney, for Appellant.

A. H. Oversmith, for Respondents.

LEE, C. J.—Suit to recover money. Defendant and respondent, F. M. Green, had a judgment against one, C. Paine, father of plaintiff and appellant, Erwin Paine. Under a writ of attachment, Green on September 20, 1930, garnisheed $265.55 in the Latah County State Bank, standing on deposit in the name of the judgment debtor. The money was paid over to Constable Albert Strom, a defendant and respondent herein. Thereafter, on September 22d, C. Paine and Lawrie Paine, his son, claiming to be the owners of the deposit by reason of an alleged copartnership of C. Paine & Son, assigned the same to plaintiff and appellant, Erwin Paine, who proceeded to institute this action against the constable and attaching creditor. From a judgment in defendants' favor comes this appeal.

Notwithstanding 26 specifications of error and insufficiency, this case ultimately narrows down to two questions of fact, viz.: Was there a copartnership as alleged and was the deposit copartnership property? Substantial evidence was introduced by appellant plaintiff that for about five years C. Paine, and his son, Lawrie, had together engaged in threshing operations throughout the countryside upon a "50–50" basis: they were doing so all during the season of 1930. The machine used was partnership property and the proceeds of the threshing jobs, together with sums furnished by father or son, created the deposit that was attached in the Latah County State Bank. During the year 1930, a deposit was kept in the First Bank of Troy in the name of C. Paine.

Appellant claims that, although the deposits at both banks stood in the name of C. Paine, they were in fact partner-

ship funds upon which either he or his son, Lawrie, could at all times check, the Latah County State Bank having such definite knowledge of the relation that it issued deposit slips in the name of C. Paine & Son. As further evidence of the bank's knowledge of the partnership, appellant introduced an identification card bearing the individual signatures of C. Paine and Lawrie Paine, in the sequence indicated: there was no notation that they were partners.

As opposed to this evidence, respondents succeeded in showing that the ledger sheets at the Latah County State Bank were carried in the name of C. Paine; that, although deposits allegedly for the copartnership had been made on August 28th, September 8th and September 16th, not one had been checked on in the partnership name. Of a dozen checks drawn on the Latah County State Bank between August 28th and September 19th inclusive, all bore the name of C. Paine. Eight checks drawn upon the First Bank of Troy from August 9th to September 2d bear the signature of "C. Paine" by "Lawrie" or "Lawrie Paine." O. W. Schroeder, cashier of the Latah County State Bank, testified he did not know that the deposit was a partnership account, that it was kept in the name of C. Paine, that farmers put payment of their threshing bills in "his" account and that, had the witness known a partnership account had been contemplated, he would have had C. Paine and Lawrie Paine sign the identification card so as to show it; that the only reason for having both sign it was to be sure of the signatures, he having been advised that the deposit would be subject to the check of either. Respondent Green testified to a conversation had with C. Paine a few days after September 19th, the day he instituted suit resulting in the judgment hereinbefore mentioned. In that conversation, he quotes the elder Paine as follows: "You can have my money which is in the Latah County State Bank to pay you."

In addition, it appeared that during the time of the alleged copartnership C. Paine and wife had mortgaged to the First Bank of Troy a threshing machine he had testified was partnership property. None of his sons had joined in

the mortgage. Explaining the failure of the other member or members of the copartnership to participate in its execution, he swore that the witness, Ole Bohman, president of the bank, told him it was unnecessary, that "one was enough" and that he did not wish any of the boys to sign it. Bohman positively denied that any reference to the sons was made, whatever. Asked, if any deposits were at any time made in his bank during 1930 by C. Paine & Son, he answered: "There was not." He also stated that, when farmers came in and paid their threshing bills, the moneys were credited to C. Paine's account. Respondent Green, engaged in the warehouse and feed business at Troy, testified that he had never heard of the copartnership of C. Paine & Son, that he had seen the record of the mortgage given on the threshing outfit by C. Paine and had extended him credit, believing that Paine owned the property in his own right. Although his father and himself had sworn that Lawrie Paine had an interest in the mortgaged outfit, Lawrie Paine testified that he never knew it was mortgaged. Yet, later he admitted that he did know of it and helped to pay the mortgage off. In view of such positive evidence, it cannot be said that the verdict rests upon an insufficiency.

Appellant complains of the court's exclusion of an envelope postmarked "Deary Idaho" bearing the letter-head of the Deary Mercantile Company, addressed to "Payne & Son" at Troy, Idaho, and containing a bill from the company to "Payne & Son." We think the court erred. But, in no event could it have served as direct proof of the copartnership: at most, it could have gone only to general reputation, confirmatory in its nature. On the question of partnership, there was an abundance of direct proof before the jury.

Over appellant's objection, Lawrie Paine, one of appellant's assignors, was with other witnesses excluded from the courtroom. Claiming that as an assignor he had an interest in the suit, such exclusion is specified as error. Whatever his interest, he was not a party to the suit; and his exclusion was a matter wholly within the discretion of the

court. (C. S., secs. 6476 and 8030.) The record shows no abuse of discretion.

■ Appellant characterizes as "error of the gravest sort" the giving of Instruction No. 12 where the court advised the jury that the possession of personal property raises a presumption of ownership and that, if it should find from the evidence that the copartnership or the members thereof so handled its property and its earnings as to mislead others, particularly respondent Green, into the belief that such property was individually owned by C. Paine, and that, in consequence of such belief, he extended credit to C. Paine, then, in that event, appellant was estopped to assert partnership ownership. This instruction was correct. The court did not say the presumption was conclusive; and there was sufficient evidence to warrant the direction with reference to estoppel.

■ Appellant invokes the general rule that, to be available, estoppel must be plead. It was not plead. But respondents rely upon the exception where, not until during the trial, facts establishing estoppel appear. If, prior to the trial, a party has no knowledge of the facts constituting estoppel, he may avail himself of it when they do evolve. (21 C. J. 1244.) The rule is indirectly recognized in *Burton v. Bayly*, 50 Ida. 707, 300 Pac. 359, 360. As to the partnership, the complaint contained nothing but the alleged existence of a copartnership and copartnership funds. These allegations respondents denied. What was there to direct them to notice of facts which might afford an estoppel? It is true they knew that a certain threshing outfit had been mortgaged in the name of C. Paine and wife. But how were they to know that appellant would assert that this self same property belonged to C. Paine & Son? The presumption would be that, instead of committing fraud on creditors, he mortgaged property he had a right to mortgage. The record, however, discloses that the facts giving rise to the urged estoppel were elicited without objection from appellant's own witnesses. In such instance, no pleading of

estoppel is required. (10 R. C. L. 842, par. 148.) The other specifications of error are without effective merit.

Judgment affirmed; costs to respondents.

Budge, Givens, Varian and McNaughton, JJ., concur.